UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

NATIONAL LABOR RELATIONS BOARD,
Petitioner,

v.

No. 98-2506

COMPLETE CARRIER SERVICES,
INCORPORATED,
Respondent.

On Application for Enforcement of an Order
of the National Labor Relations Board.
(5-CA-26085, 5-RC-14305)

Submitted: July 20, 1999

Decided: August 10, 1999

Before HAMILTON and MOTZ, Circuit Judges, and PHILLIPS,
Senior Circuit Judge.

_____

Petition granted by unpublished per curiam opinion.

_____

**COUNSEL**

Frederick L. Feinstein, General Counsel, Linda Sher, Associate Gen-
eral Counsel, John D. Burgoyne, Acting Deputy Associate General
Counsel, David Habenstreit, Preston L. Pugh, NATIONAL LABOR
RELATIONS BOARD, Washington, D.C., for Petitioner. Charles E.
Sykes, Judith Batson Sadler, BRUCKNER & SYKES, L.L.P., Hous-
ton, Texas, for Respondent.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

In this case the National Labor Relations Board ("Board") petitions for enforcement of its bargaining order issued against Respondent Complete Carrier Services, Inc. ("Carrier"). The order is the result of a charge by Teamsters Local 311 that Carrier, which leases drivers to freight transportation firms, committed unfair labor practices at its Baltimore, Maryland terminal, which invalidated an election held in March 1996 to determine the Union's authority to bargain on behalf of the drivers. The Board held that Carrier engaged in numerous unfair labor practices shortly before the election, including threatening employees with job loss and reprisals, soliciting grievances, promising and granting pay raises and other benefits, and threatening plant closure if the Union won the election, which it found dissipated the Union majority reflected only a few months earlier through authorization cards signed by nine of ten drivers comprising the bargaining unit. It further found Carrier's misconduct sufficiently serious and pervasive that traditional remedies such as a new election would not cure the violations, and therefore issued a mandatory bargaining order.

On appeal, Carrier challenges the Board's finding of a pre-election Union majority. Further, it contends that the Administrative Law Judge ("ALJ") who conducted a hearing on this matter committed error in making an evidentiary ruling at the hearing. Finally, Carrier argues that the Board failed to sufficiently support its decision to issue a mandatory bargaining order rather than impose a more traditional remedy such as a new election.

While we generally accept Board findings that are supported by substantial evidence, see Monongahela Power Co. v. NLRB, 657 F.2d 608, 611 (4th Cir. 1981), we review the Board's selection of remedies for an abuse of discretion. See NLRB v. Williams Enters., 50 F.3d

2

1280, 1289 (4th Cir. 1995). In the context of mandatory bargaining orders issued by the Board pursuant to NLRB v. Gissel Packing Co., 395 U.S. 575 (1969), however, we accord the Board"less deference." See Be-Lo Stores v. NLRB, 126 F.3d 268, 274 (4th Cir. 1997). The applicable tests for determining the propriety of a mandatory bargaining order differ depending largely on the egregiousness of the employer's misconduct. The most stringent test requires Board findings: (1) that the union once had majority status; (2) that employer's misconduct dissipated such status; (3) that there is only slight possibility of erasing the effects of these practices and ensuring a fair election; and (4) that employee sentiment would, on balance, be better protected by a bargaining order. Id. at 274-75.

In this case, prior to the election, a Carrier employee, Victor Paniagua, distributed authorization cards to the drivers at the Baltimore terminal. Nine of ten of the drivers who received cards authorized the Union to act as their exclusive bargaining agent. On appeal, Carrier argues that the cards were invalid because, among other things, Paniagua was not a statutory employee who was part of the bargaining unit but rather was more appropriately viewed as either Carrier's agent, a confidential employee, or a supervisor. Carrier's argument flows from the fact that at the time he solicited the cards, Paniagua was not working as a driver but as an office employee because a workers' compensation injury had temporarily restricted him to light duty. Substantial evidence, however, firmly supports the ALJ's finding that Paniagua was a truck driver who was a member of the bargaining unit. He was an experienced driver indisputably hired by Carrier to be a driver who was injured while in training to be a permanent driver. Moreover, he eventually did return to work as a driver. Carrier's contentions to the contrary are without merit.

Carrier also asserts that the cards were tainted because they were misleading to the drivers. While there is no dispute that the cards referenced both Carrier and the company to which the drivers were leased as employers, we cannot conclude that confusion over which company should have been listed as the drivers' employer on the cards undermines employee sentiment in favor of Union representation. Further, while the record indicates that a few drivers were told that there would be an election, it does not support Carrier's contention that the drivers were misled to believe that the cards served the

3

sole purpose of obtaining an election.* We therefore reject Carrier's claims that the authorization cards were invalid, and conclude that the Board properly found that the Union enjoyed majority status prior to the election.

Next, we find that Carrier fails to demonstrate any prejudice resulting from the ALJ's allegedly erroneous refusal to reopen the record to permit Carrier to respond to evidence presented by the Board bearing on Carrier's past practices concerning pay increases. Carrier's award of a retroactive pay increase to employees shortly before the election was only one of numerous unfair labor practices found by the Board. Moreover, it was both the timing of the raises and comments made by Carrier's owner concerning the raises to employees that led the Board to conclude that the pay increase was unlawfully motivated.

Substantial evidence also supports the Board's finding that Carrier's misconduct eroded support for the Union. Only two drivers unequivocally supported the Union in the election, whereas, less than three months earlier, nine of ten did. Carrier nonetheless contends that a remedy other than a mandatory bargaining order, such as a new election, was more appropriate in this case. We disagree. Carrier's misconduct was outrageous and pervasive. The Board could reasonably conclude that a new election would not erase the effects of this misconduct, particularly in light of the fact that many of the violations were committed by the owner of the company and every employee in the bargaining unit was subjected to the misconduct. Moreover, given that the Union's majority was overwhelming prior to the misconduct, the Board also reasonably found that employee sentiment was best protected by a bargaining order.

We note Carrier's contention that a bargaining order is inappropriate because it no longer employs the Baltimore drivers. We have previously found that the sale of a company, found to be subject to a mandatory bargaining order, to an unrelated facility does not bar enforcement of the order where, as in this case, the order extends to the offending company's successors. See NLRB v. Honaker Mills, Div. of Top Form Mills, 789 F.2d 262, 268 (4th Cir. 1986). Moreover,

_____

*It is undisputed that the cards authorized the Union to act as the drivers' exclusive bargaining agent in unequivocal language.

4

as the Board points out in its brief, there is no guarantee that Carrier will not reacquire control over the relevant employees at some point in the future.

Accordingly, the Board's petition for enforcement is granted. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

PETITION GRANTED

5